**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                          :

**VINCENT CRAWFORD,**                         :
                                          :

               **Plaintiff,**             :
                                          :

     **-against-**                 :        **REPORT &**
                                        :        **RECOMMENDATION**

**SOUTHLAND TRANSPORTATION**      :        **06 Civ. 6224 (SCR)(MDF)**
**COMPANY, and**                      :
**MELVIN CUMMINGS,**              :
                                          :

             **Defendants.**        :
                                          :
-------------------------------------------------------------X

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

Plaintiff Vincent Crawford ("Crawford") brings this action in diversity against

Defendants Southland Transportation Company ("Southland") and Melvin Cummings

("Cummings"), alleging claims for injuries sustained from an accident in which the truck

Cummings was driving rear-ended Crawford's car. Currently pending before the Court is

Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of

the complaint on the ground that Crawford did not suffer a "serious injury" as defined by Section

5102(d) of the New York Insurance Law, and Crawford's cross-motion for summary judgment

on the issue of liability (Doc. #'s 17-19, 22-26). For the reasons that follow, I respectfully

recommend that your Honor grant Defendants' motion, deny Crawford's cross-motion, and

dismiss this action.

## BACKGROUND

On May 10, 2004, Crawford and Cummings were involved in an automobile accident

when an unidentified vehicle made an abrupt turn from the left lane of Interstate 84 westbound

onto the median to make a U-turn. Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Defs.' Rule 56.1 Statement") ¶ 1. All of the vehicles behind the unidentified vehicle in question applied their brakes and slowed down. *Id.* Cummings, who was driving behind Crawford in a tractor-trailer truck, applied his brakes but was unable to stop before hitting Crawford's car. *Id.*; *see also* Plaintiff's Counterstatement Pursuant to Local Civil Rule 56.1(b) ("Pl.'s Rule 56.1 Statement") ¶¶ 1, 7-8. Crawford's car had airbags, but they did not deploy. Defs.' Rule 56.1 Statement ¶ 2. After the accident, Crawford was in a state of shock and did not feel any pain. *Id.* ¶ 3; Pl.'s Rule 56.1 Statement ¶ 3. He got of his car and was able to open the car door and remove his seatbelt. Defs.' Rule 56.1 Statement ¶ 4. He was not bleeding. *Id.* ¶ 5. When an ambulance arrived, he was asked to sit in the ambulance, at which point he started to feel pain in his neck, upper back, and arms. Pl.'s Rule 56.1 Statement ¶ 3. Crawford was taken to Putnam County Hospital, and x-rays were taken of his neck. Defs.' Rule 56.1 Statement ¶¶ 6-7. The hospital personnel informed him that he suffered from whiplash. *Id.* ¶ 8. Crawford remained in the hospital for a few hours and was released with a neck brace. *Id.* The hospital personnel told him that if the discomfort from his injuries persisted, he should go see his physician. *Id.* ¶ 9.

Crawford returned to work approximately three weeks after the accident, *id.* ¶ 10, but he claims that since the accident, he has not been able to engage in physical labor as a carpenter. Pl.'s Rule 56.1 Statement ¶ 32. Rather, he is now only able to perform sedentary work. *Id.* ¶ 33; *see also* Maurer Affirmation Ex. 4. Three months after the accident, in August 2004, Crawford went to see his physician, Dr. Matthew Mannini. Defs.' Rule 56.1 Statement ¶ 9; Pl.'s Rule 56.1 Statement ¶ 15. At that time, he complained of sharp neck pains, tingling and numbness in his

arms, and headaches.  Pl.'s Rule 56.1 Statement ¶ 15.  Dr. Mannini referred Crawford to a

neurosurgeon, Dr. Peris, who Crawford saw about one week later.  *Id.* ¶ 16.  Dr. Peris referred

Crawford for physical therapy for his neck and shoulder area.  *Id.* ¶ 17.  Crawford has received

physical therapy on and off since the May 2004 accident.  *Id.*

Crawford was involved in a second automobile accident in April 2005, in which his car

was rear-ended and in turn, he rear-ended the car in front of him.  Defs.' Rule 56.1 Statement ¶¶

11-13; Pl.'s Rule 56.1 Statement ¶ 37.  His car was "totaled" in that accident.  Defs.' Rule 56.1

Statement ¶ 14.  However, no one was injured, and no ambulance arrived on the scene.  Pl.'s

Rule 56.1 Statement ¶ 37.  Crawford did not go to the hospital as a result of that accident.  *Id.*

Crawford began treatment with Dr. Rytis Valskys, formerly of North Eastern Pain

Management at Putnam Hospital Center, on January 25, 2005, and over the course of the next

two and a half years, received treatments from Dr. Valskys, including a number of median

branch nerve blocks, injections, and prescriptions for pain relievers.  Pl.'s Rule 56.1 Statement

¶¶ 18, 20.  A neurologic evaluation was performed on Crawford by Dr. Kishore Ranade of

Northeast Neurology Associates, P.C. in January 2006, and Dr. Neil Patel, a physician with a

sub-specialty in pain management, assumed responsibility for Crawford's treatment on March 6,

2007.  *Id.* ¶¶ 22-23.  Dr. Patel thereafter saw Crawford on nine additional occasions between

April and September 2007.  *Id.*  Crawford was also examined by two doctors retained by

Defendants – Dr. Michael Weintraub, a neurologist, on May 15, 2007, and Dr. Michael Rosen,

an orthopedist, on May 30, 2007.  Defs.' Rule 56.1 Statement ¶¶ 15-16; Morio Decl. Exs. G &

H.

**DISCUSSION**

**I.     Summary Judgment Standard**

Summary judgment shall be granted where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court

must view the record in the light most favorable to the nonmovant and resolve all ambiguities

and draw all reasonable inferences against the movant.  *See Donahue v. Windsor Locks Bd. of*

*Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).  "The party against whom summary judgment is

sought, however, 'must do more than simply show that there is some metaphysical doubt as to

the material facts . . . . [T]he nonmoving party must come forward with specific facts showing

that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"Only when no reasonable trier of fact could find in favor of the nonmoving party should

summary judgment be granted."  *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir. 1992)

(quoting *H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d

Cir. 1989)).

**II.     New York State's No-Fault Statutory Provisions Regarding a "Serious Injury"**

Given that "the legislative intent underlying the No-Fault Law was to weed out frivolous

claims and limit recovery to significant injuries," *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995)

(citation omitted), New York's Insurance Law allows injured parties to seek recovery for non-

economic loss only in the event of a "serious injury."  *See* N.Y. Ins. Law §5104(a) ("[I]n any

action by or on behalf of a covered person against another covered person for personal injuries

arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no

right of recovery for non-economic loss, except in the case of a serious injury, or for basic

economic loss."). Insurance Law § 5102(d) defines a "serious injury" as

> a personal injury which results in death; dismemberment; significant
> disfigurement; a fracture; loss of a fetus; permanent loss of use of a body
> organ, member, function or system; permanent consequential limitation of
> use of a body organ or member; significant limitation of use of a body
> function or system; or a medically determined injury or impairment of a
> non-permanent nature which prevents the injured person from performing
> substantially all of the material acts which constitute such person's usual
> and customary daily activities for not less than ninety days during the one
> hundred eighty days immediately following the occurrence of the injury or
> impairment.

On a motion for summary judgment in a case involving the No-Fault Law, the defendant

must initially make a *prima facie* showing that the plaintiff did not suffer a "serious injury."

*Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). If the defendant is able to make a *prima facie*

showing, then the burden shifts to the plaintiff to "come forward with sufficient evidence to

overcome defendant's motion by demonstrating that [he] sustained a serious injury within the

meaning of the No-Fault Insurance Law." *Id.* at 957 (citations omitted). As the New York Court

of Appeals explained, a plaintiff must provide

> . . . objective proof of [his] injury in order to satisfy the statutory
> serious injury threshold; subjective complaints alone are not sufficient.
>
> In order to prove the extent or degree of physical limitation, an
> expert's designation of a numeric percentage of a plaintiff's loss of range
> of motion can be used to substantiate a claim of serious injury. An
> expert's qualitative assessment of a plaintiff's condition also may suffice,
> provided that the evaluation has an objective basis and compares the
> plaintiff's limitations to the normal function, purpose and use of the
> affected body organ, member, function or system.

*Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350-51 (2002) (citations omitted).  If the

plaintiff is unable to meet the statutory serious injury threshold, then the defendant is entitled to

summary judgment.  *Gaddy*, 79 N.Y.2d at 957; *see also Licari v. Elliott*, 57 N.Y.2d 230, 238

(1982) ("If it can be said, as a matter of law, that plaintiff suffered no serious injury . . . then

plaintiff has no claim to assert and there is nothing for the jury to decide.") (citation omitted).

A.      **Defendants' Initial Showing**

In an interrogatory response, Crawford described his alleged injuries as follows:

> Whiplash injury superimposed upon pre-existing degenerative changes in
> cervical spine causing:  HNP at C4-C5; ulnar neuropathy versus a right
> lower cord brachial plexopathy, less likely a cervical radiculopathy; mild
> spondylosis from C3-C4 through C6-C7; cervicalgia; [c]ervical
> impingement and cervical radiculopathy, with pain in plaintiff's neck
> radiating through his shoulders and arms and causing numbness in
> plaintiff's fingers on both hands; constant headaches; cervical strain.

Morio Decl. Ex. D, ¶ 8.  In his papers submitted in opposition to this motion, Crawford now

describes his injuries as "cervical radiculopathy and aggravation of an underlying, pre-existing,

cervical degenerative joint disease condition that was asymptomatic before the 5/10/04

accident."  Pl.'s Mem. of Law in Opp. (Doc. # 22) at 4.  Furthermore, these "causally related

injuries caused [Crawford] to develop a permanent pain syndrome causing significant limitation

of use of his neck and upper extremities."  *Id.* at 4-5.

In arguing that Crawford has not suffered a "serious injury" within the meaning of §

5102(d), Defendants provide the reports of two doctors they retained to perform independent

medical examinations of Crawford – neurologist, Dr. Michael Weintraub, and orthopedist, Dr.

Michael Rosen.  *See* Morio Decl. Exs. G ("Weintraub Report") & H ("Rosen Report").

Crawford argues that Defendants' motion is defective since these are unsworn medical reports.

However, 28 U.S.C. § 1746 applies to cases brought in federal court and "provides that unsworn declarations made under the penalty of perjury have the same evidentiary weight as affidavits." *Williams v. Elzy*, No. 00 Civ. 5382, 2003 WL 22208349, at *5 (S.D.N.Y. Sept. 23, 2003). Section 1746 states that in order for an unsworn statement to be given the same weight as an affidavit, it must contain substantially the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

At the conclusion of Dr. Rosen's report it states, "I CERTIFY AND AFFIRM THAT THE FOREGOING REPORT IS TRUE, TO THE BEST OF MY KNOWLEDGE, UNDER PENALTY OF PERJURY." Rosen Report at 17. Dr. Weintraub's report concludes with the statement, "I am a physician duly licensed to practice medicine in the State of New York. I am not a party to the foregoing action and affirm the foregoing to be true under the penalties of perjury pursuant to CPLR § 2106."[1] Weintraub Report at 5. This language is sufficient to satisfy the requirements of § 1746. Consequently, these medical reports are admissible evidence that may be considered in deciding Defendants' motion for summary judgment.

Dr. Weintraub's report includes an extensive summary of all of Crawford's medical records that he reviewed, as well as a summary of his neurological examination of Crawford on May 15, 2007. He concluded as follows:

> This patient demonstrates a relatively normal neurological exam except
> for voluntary restriction in neck range of motion. Preexisting
> degenerative spine disease was present with foraminal stenosis. There is

---

[1] N.Y. CPLR Rule 2106 states, "The statement of . . . a physician . . . authorized by law to practice in the state, who is not a party to an action, when subscribed and affirmed by him to be true under the penalties of perjury, may be served or filed in the action in lieu of and with the same force and effect as an affidavit."

no evidence of any herniated disk or specific cause objectively for his current complaints. There is no evidence of any neurological disability. The patient has had numerous treatments considered state-of-the-art and yet is not improved and is on continuous Vicodin indicating a dependency. Again, the patient has subjective complaints with no objective findings or denervation on EMG or by repetitive MRIs.

In conclusion, the accident of 5/10/04 appears to have produced a cervical strain syndrome which would have been anticipated to reverse within 6 months or at the most 12 months. There is no evidence of herniated disk, change in the lordosis, etc. Preexisting degenerative spine disease is present which may be the cause for his complaints but there does not appear to be any objective evidence of neurological disability related to the accident of 5/10/04.

Weintraub Report at 5.

Dr. Rosen's report likewise includes an extensive summary of all of Crawford's medical records that he reviewed, as well as a summary of his examination of Crawford on May 30, 2007. He concluded as follows:

I. Injuries Sustained and Causal Relationship:

As a result of the trauma of 5/10/04, based on the history provided by the Putnam Hospital Center, it appears that the patient sustained some sort of soft tissue strain to his neck.

Because of the greater than three month gap between the initial injury and the subsequent follow up treatment, it is impossible to state, with any degree of medical certainty, that the patient's neck symptoms are the direct result of that single trauma. This is especially based on the fact that the MRI scan performed later shows that osteophyte complex with spurring and foraminal stenosis at two separate levels, due to essentially degenerative changes, which certainly did not occur with the single trauma reported.

In addition, what complicates the picture is that the patient was serving as a home renovator and doing construction type activities. These could possibly precipitate problems with his neck. Because of the three month lack of any follow up, it is impossible to state that the current symptoms relate to the May 2004 trauma.

8

II.  Present Condition and Disability:

At the present time, the patient has subjective complaints of essentially localized pain about the neck and upper back region. There is no evidence of any radicular complaints, nor is there any evidence of any muscle weakness or atrophy.  There is no evidence of any sensory loss.  There is no reflex change.  There is only noted to be a mild decrease in range of motion to the neck, which certainly goes along with the degenerative changes noted at the facet joints.

. . .

IV.  Prognosis:

Prognosis on this patient is good, especially as it relates to the effects, if any, of the accident of May 2004.  The patient clearly has significant degenerative changes in his neck, but they certainly have preceded the accident in question.  It appears, based on my examination, that these degenerative changes are the current source of his local mechanical symptoms at the base of his neck.

Rosen Report at 16-17.  With these medical reports, Defendants have satisfied their burden to make a *prima facie* showing that Crawford did not suffer a serious injury as a result of the automobile accident on May 10, 2004.

### B.    Crawford's Evidence in Response

In light of Defendants' *prima facie* showing, the burden has shifted to Crawford to provide "objective medical proof of a serious injury causally related to the accident."  *Pommells v. Perez*, 4 N.Y.3d 566, 574 (2005).  To meet his burden, Crawford submitted an affidavit from one of his treating physicians, Dr. Neil Patel, a physical medicine and rehabilitation doctor with a sub-specialty in pain management.  *See* Maurer Affirmation Ex. 2 ("Patel Aff.").  Dr. Patel began treating Crawford on March 6, 2007 and subsequently saw Crawford nine more times between April and September 2007.  *See id.* ¶ 9.  While Defendants argue in their motion papers that Crawford has failed to establish that he suffered a serious injury within any of the nine

enumerated categories set forth in § 5102(d), the only category that Crawford claims applies is "significant limitation of use of a body function or system." *See* Pl.'s Mem. of Law in Opp. (Doc. # 22) at 10. However, Dr. Patel's affidavit states that Crawford's injuries both significantly *and* permanently limit Crawford's use of his arms and neck, Patel Aff. ¶ 19, supporting a claim that his injuries also fall within the category of a "permanent consequential limitation of use of a body organ or member." Whether a limitation of use is "'significant' or 'consequential' (*i.e.*, important . . .) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure*, 98 N.Y.2d at 353 (quoting *Dufel*, 84 N.Y.2d at 798). A "minor, mild or slight limitation of use" does not constitute a serious injury. *Licari*, 57 N.Y.2d at 236. "Where, as here, a plaintiff is relying on expert opinion to give rise to an issue of fact as to the existence of a serious injury, the opinion must be supported by objective tests." *Williams*, 2003 WL 22208349, at *4.

In terms of objective tests, Dr. Patel cites to a cervical MRI performed on December 28, 2004, the results of which "revealed mild spondylosis at the C3-C4 and C4-C5 levels . . . minimal foraminal stenosis at the C3-C4 level, secondary to disc osteophytic spur complex, and also mild bilateral foraminal stenosis secondary to a disc osteophytic complex at the C4-C5 level." Patel Aff. ¶ 4. However, Dr. Patel fails to correlate this MRI result with any injury sustained by Crawford in the May 2004 accident. Dr. Rosen had concluded that the more than three-month gap between the accident and Crawford's first doctor visit made it impossible for him to determine whether Crawford's neck symptoms were the direct result of the accident, especially in light of the fact that "the MRI scan performed later shows that osteophyte complex

10

with spurring and foraminal stenosis at two separate levels, due to essentially degenerative changes, which certainly did not occur with the single trauma reported." Rosen Report at 16. Dr. Patel's affidavit does not refute this finding. Rather, he concludes, "It is my opinion, within a reasonable degree of medical certainty, that Mr. Crawford's injury on 5/10/04 caused him to develop a C-5 Cervical radiculopathy and aggravated an underlying Cervical degenerative joint disease condition that pre-existed the 5/10/04 accident but was reportedly, previously asymptomatic." Patel Aff. ¶ 13.

While degenerative changes in a patient's cervical spine confirmed by a diagnostic test such as an MRI "can afford objective evidence of a qualifying loss or limitation of use of a body function or system, this is only true where a medical expert opines that the observed condition is causally connected to the patient's accident." *Hines v. Capital Dist. Transp. Auth.*, 719 N.Y.S.2d 777, 779 (N.Y. App. Div. 2001) (citations omitted). Dr. Patel does not state that the spondylosis, foraminal stenosis, or disc osteophyte complex appearing on the MRI was caused by the May 2004 accident. Moreover, to the extent that Dr. Patel opines that Crawford's degenerative condition was "aggravated" by the accident, as opposed to having been caused by the accident, he does not claim that such aggravation of the condition was depicted in the December 2004 MRI. Therefore, the MRI does not serve as objective evidence of the aggravation. *See id.*[2] Alternatively, even assuming *arguendo* that Crawford has created a question of fact as to whether the accident aggravated a previously asymptomatic degenerative condition, Dr. Patel fails to explain how the "mild spondylosis" and "minimal foraminal

---

[2]Dr. Patel does not comment at all on a second cervical MRI performed on Crawford on June 6, 2006, which showed "no significant change" from the December 28, 2004 MRI. *See* Rosen Report at 9.

stenosis" shown in the MRI constitute anything more than "minor, mild or slight" physical

limitations, insufficient to establish a "serious injury." *See Licari*, 57 N.Y.2d at 236.

The only other diagnostic test cited by Dr. Patel is an EMG that he prescribed and that

was performed by Dr. Bradley Cash on October 26, 2007, which revealed "moderate C5

radiculopathy on the right. There is also some evidence suggestive of a right median motor

compression neuropathy as demonstrated by decreased amplitude." Patel Aff. ¶ 9 & Ex. 1. Dr.

Patel declares that the EMG findings "are objective evidence that Mr. Crawford is suffering from

a significant neurological condition consistent with his long-standing complaints of pain and

demonstrated limitation of use of his neck and upper extremities." *Id.* ¶ 10. However, Dr.

Cash's use of the phrase "some evidence suggestive of" does not support Dr. Patel's conclusion

that Crawford's condition is "significant." Moreover, Dr. Patel provides no objective basis for

his finding of a "demonstrated limitation of use" – only the statement in his affidavit that "I am

informed by Mr. Crawford that he has been unable, since his 5/10/04 car accident, to engage in

the physical work of a carpenter and that he is now only able to perform sedentary work." *Id.* ¶

18.[3]

Lastly, the fact that the October 2007 EMG, performed almost 3-1/2 years after the

accident, is the first diagnostic test on which this condition appears, gives rise to a question of

causation. *See* Section III.C., *infra*. Indeed, in his affidavit, Dr. Patel notes that Crawford

underwent a neurologic evaluation by Dr. Kishore Ranade of Northeast Neurology Associates,

---

[3]Crawford's representation is itself subject to question, *see* Rosen Report at 11 ("The patient was seen by pain management specialist Dr. Valskys on 11/14/06. . . . The doctor notes that the patient was able to work his physical job."), as is Dr. Patel's. *See id.* at 12 ("The patient was then seen on 3/6/07 by pain management specialist Dr. Patel. . . . The patient remained stable since getting back to physical therapy. The patient reported that the manual labor job was causing increased intensity of pain over the prior few days.").

P.C. in January 2006, which "resulted in Dr. Ranade developing the reported impression that Mr. Crawford was suffering from either an ulnar neuropathy versus a right lower cord brachial plexopathy or less likely a cervical radiculopathy." *Id.* ¶ 8. However, he makes no mention of the additional facts, set forth in Dr. Rosen's report, that Dr. Ranade thereafter "suggested performing an electromyography and nerve conduction velocities to evaluate this"; that Dr. Ranade did perform electromyography and nerve conduction velocities of Crawford's upper extremities on January 24, 2006; and that "[t]hese studies were felt to be within normal limits." Rosen Report at 7-8; *see also* Weintraub Report at 3 (EMG was performed on 1/24/06 and was normal). Dr. Patel provides no explanation of how the accident on May 10, 2004 caused the change in EMG results from January 2006 to October 2007.

Rather, based on his review of Dr. Valskys' medical records, as well as the results of the December 2004 MRI and the October 2007 EMG, Dr. Patel concluded:

> 13. It is my opinion, within a reasonable degree of medical certainty, that Mr. Crawford's injury on 5/10/04 caused him to develop a C-5 Cervical radiculopathy and aggravated an underlying Cervical degenerative joint disease condition that pre-existed the 5/10/04 accident but was reportedly, previously asymptomatic.
>
> 14. It is my opinion, within a reasonable degree of medical certainty, that Mr. Crawford has developed a permanent pain syndrome due to the 5/10/04 car accident which causes Mr. Crawford to suffer daily pain of a moderate to severe nature, worsened by use of his neck and arms.
>
> 15. It is my understanding that Mr. Crawford's former occupation as a carpenter required him on a daily basis to engage in constant, repetitive use of both of his arms when lifting, holding and carrying heavy construction material and using hand and power tools.
>
> 16. The [n]ormal function, purpose and use of the neck, shoulders and arms, when free of pain, involves these body parts working in concert so as to permit lifting, holding, carrying, pushing, pulling and the application of force.

13

17. It is my opinion, within a reasonable degree of medical certainty, that the injuries Mr. Crawford sustained due to the 5/10/04 car accident (the C-5 Radiculopathy, aggravation of plaintiff's pre-existing, asymptomatic cervical degenerative joint disease, and resulting permanent pain syndrome) significantly limited Mr. Crawford's ability to use his arms and neck.

18. I am informed by Mr. Crawford that he has been unable, since his 5/10/04 car accident, to engage in the physical work of a carpenter and that he is now only able to perform sedentary work.

19. It is my opinion, within a reasonable degree of medical certainty, that Mr. Crawford's inability since 5/10/04 to perform the physical aspects of carpentry work is a natural, expected and permanent medical consequence of his 5/10/04 injuries which significantly and permanently limit Mr. Crawford's use of his arms and neck.

Integral to Dr. Patel's conclusions is his diagnosis of "permanent pain syndrome," unsupported by any objective medical evidence either for the diagnosis itself or for the significant limitation in Crawford's ability to use his arms and neck allegedly caused by this syndrome.

In sum, Dr. Patel's findings, unsupported by objective medical proof and mirroring language found in *Toure v. Avis Rent A Car*, *supra*, are the type of "conclusory assertions tailored to meet statutory requirements" that fail to establish a serious injury. *Lopez v. Senatore*, 65 N.Y.2d 1017, 1019 (1985).

## C. Contributory Factors

Moreover, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury – such as a gap in treatment, an intervening medical problem or a preexisting condition – summary dismissal of the complaint may be appropriate." *Pommells*, 4 N.Y.3d at 572. Defendants argue in their reply

14

papers that Crawford presents no evidence that the objective test results to which Dr. Patel cites

are causally related to the May 10, 2004 accident.  *See* Reply Mem. of Law (Doc. # 26) at 6-8.

As explained above, Dr. Rosen specifically stated that the more than three-month gap

between the accident and Crawford's first doctor visit made it impossible for him to determine

whether Crawford's neck symptoms were the direct result of the accident, based both on the

MRI, which indicated degenerative changes, as well as the fact that Crawford's job in

construction could have precipitated problems with his neck.  *See* Rosen Report at 16.  Dr. Patel

did not provide any objective medical evidence to establish either that the degenerative changes

shown in the MRI were caused by the accident, or that the degenerative changes shown in the

MRI reflected the aggravation of Crawford's preexisting degenerative spine condition by the

May 2004 accident.  Indeed, Crawford provides no objective medical evidence to refute the

conclusions of Drs. Rosen and Weintraub, upon physically examining him, that his preexisting

degenerative condition was the cause for his physical complaints.  *See* Rosen Report at 17 ("The

patient clearly has significant degenerative changes in his neck, but they certainly have preceded

the accident in question.  It appears, based on my examination, that these degenerative changes

are the current source of his local mechanical symptoms at the base of his neck."); Weintraub

Report at 5 ("Preexisting degenerative spine disease is present which may be the cause for his

complaints but there does not appear to be any objective evidence of neurological disability

related to the accident of 5/10/04.").

In addition, Defendants argue that Crawford cannot establish a "serious injury" resulting

from the May 2004 accident since he nowhere accounts for the effect on his injuries of the

second automobile accident, which occurred 11 months later, in April 2005.  Indeed, in

reviewing the extensive discussion of Crawford's medical records in the reports of Drs.

Weintraub and Rosen, there is no indication that Crawford's doctors were even aware of the

second accident, and Dr. Patel makes no mention of it in his affidavit. Yet, in the second

accident, Crawford's car underwent the same kind of rear-end impact and, as Crawford testified

at his deposition, his car was totaled. *See* Maurer Affirmation Ex. 1 at 29-30. There is thus no

way to assess how, or whether, this subsequent accident might have affected Crawford's physical

condition. This is all the more important in light of both Dr. Patel's statement that "Mr.

Crawford has experienced *unremitting and increasing* symptoms for three and one half years

since the [May 10, 2004] auto accident," Patel Aff. ¶ 11 (emphasis added), and Dr. Weintraub's

finding that "the accident of 5/10/04 appears to have produced a cervical strain syndrome *which*

*would have been anticipated to reverse* within 6 months or at the most 12 months." Weintraub

Report at 5 (emphasis added).[4]

Therefore, for the additional reason that he has failed to provide evidence to refute

Defendants' contentions regarding lack of causation, Crawford has failed to carry his burden to

establish that he suffered a "serious injury" as a result of the May 10, 2004 accident.

## III.     Crawford's Cross-Motion for Summary Judgment

Crawford contends that he is entitled to summary judgment on the question of liability

since the undisputed facts show that Cummings drove his truck negligently, while there is no

evidence to show that Crawford himself drove negligently. However, "[n]egligence cases by

their very nature do not usually lend themselves to summary judgment, since often, even if all

---

[4]Moreover, as noted in Section II.B., *supra*, there is no objective medical evidence as to how these "unremitting and increasing symptoms," which appear to consist mainly of Crawford's subjective expressions of pain and weakness, resulted in any limitations of use of a body function or member.

parties are in agreement as to the underlying facts, the very question of negligence is itself a

question for jury determination." *Ugarriza v. Schmieder*, 46 N.Y.2d 471, 474 (1979). "[T]here

is often a question as to whether the defendant or the plaintiff acted reasonably under the

circumstances. This can rarely be decided as a matter of law." *Id.* at 475 (internal quotation

marks and citation omitted).

Here, Crawford argues, among other things, that Cummings' deposition testimony proves

that he was negligently driving his tractor-trailer truck too close to Crawford's car. *See* Pl.'s

Mem. of Law in Opp. (Doc. # 22) at 15-17. However, Defendants contend that this same

deposition testimony supports a finding that Cummings was traveling at or beyond the

recommended distance from Crawford's car. *See* Reply Mem. of Law (Doc. # 26) at 9. Aside

from this dispute, Crawford cites to no authority in support of his argument that Cummings was

driving negligently as a matter of law.

Given the outstanding questions as to whether Cummings acted reasonably under the

circumstances, it would not be appropriate to grant Crawford summary judgment on the issue of

liability.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that your Honor grant Defendants'

motion, deny Crawford's cross-motion, and dismiss the action.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the

parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(d), Fed. R.

Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date

hereof, to file written objections to this Report and Recommendation. Such objections, if any,

shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The

Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street**,** Room

533, White Plains, New York 10601, and to the chambers of the undersigned at Room 434, 300

Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later

appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct.

825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v.*

*Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections

must be made to Judge Robinson and should not be made to the undersigned.


Date: July 16, 2008
      White Plains, New York


                                       Respectfully submitted,

                                       MARK D. FOX
                                       UNITED STATES MAGISTRATE JUDGE